

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00057-CV

**TEXAS A&M UNIVERSITY,**

**Appellant**

**v.**

**JOHN DOE,**

**Appellee**

**From the 272nd District Court
Brazos County, Texas
Trial Court No. 18-003136-CV-272**

## MEMORANDUM OPINION

Expelled undergraduate student John Doe sued Texas A&M University (TAMU) for allegedly violating his right to due course of law under the Texas Constitution. *See* TEX. CONST. art. I, § 19. TAMU filed a plea to the jurisdiction based on sovereign immunity, which the trial court denied. TAMU thus filed this accelerated appeal, challenging the trial court's interlocutory order denying TAMU's plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

# BACKGROUND

Doe alleged in his petition that on October 1, 2018, TAMU's Division of Student Affairs informed him that he had been accused of violating various TAMU policies and procedures—specifically, that he had allegedly "committed acts of sexual abuse, unwanted sexual contact, dating violence, harassment, and use of drugs." Doe alleged that he was further informed that to adjudicate the alleged violations, TAMU had scheduled a "student conduct hearing" (hereinafter "Hearing") to begin on October 15, 2018.

In a declaration attached to TAMU's plea to the jurisdiction, the Associate Director in the Offices of the Dean of Student Life, Division of Student Affairs, at TAMU, Dr. Kristen Harrell, explained the procedure for a Hearing. Dr. Harrell's declaration provided as follows (paragraph numbers omitted):

> The [Hearing] is conducted by a non-voting panel chair and three panel members . . . who are the decision makers. Both the respondent and complainant are permitted to bring an advisor who, in sexual misconduct cases, is permitted to be an attorney. Advisors are there to assist the student but are not permitted [to] speak on behalf of the student during the [Hearing].

> A Student Conduct Administrator presents the information contained in the investigation report. The respondent and complainant are responsible for presenting their information. [TAMU] and either party can call witnesses and submit documentary information. The panel chair makes determinations on relevancy. Panel members are permitted to ask questions.

> Respondents may examine most witnesses directly. If respondents want to cross-examine the complainant or some other witnesses who may experience trauma with the examination, the respondent must submit written questions to the panel chair who screens the questions for relevance. This process is also utilized if the complainant has questions for

the respondent. Generally, in sexual misconduct cases, any question concerning the party's relationship and sexual behavior is permitted so long as it is relevant and not asked just to harass, embarrass, or humiliate the other party. The panel chair asks the question to the witness who provides an oral answer heard by the panel and others attending the [Hearing], including the respondent. The panel can also see the complainant answering the questions. Once the written questions are asked and answered, the respondent can submit additional written questions through the panel chair. This process continues until there are no more questions. The respondent's attorney can write the questions for the respondent or confer with the respondent about what to ask.

Once the information portion of the [Hearing] concludes[,] the parties make closing statements. The panel deliberates and reaches a decision as to whether or not a student conduct code violation occurred. If a violation occurred, the [Hearing] reconvenes and additional information is received about an appropriate sanction. Aggravators and mitigating factors are considered. The panel deliberates again to reach a sanction decision. Once a decision is reached[,] the sanction, if any, is announced and the [Hearing] is concluded.

Doe alleged in his petition that before his Hearing began, he "requested that [TAMU] allow him the right to cross-examine his accusers during the Hearing." Doe claimed that "if [TAMU] deprived him of the right to meaningful cross-examination of his accusers, it was a violation of his due process rights." Dr. Harrell explained Doe's request in her declaration as follows: "On October 9, 2018, . . . counsel for John Doe[ ] sent notice requesting the right to directly cross-examine the witnesses during the forthcoming [Hearing]. [Doe's counsel] claimed that the failure to allow this form of cross-examination would result in John Doe not attending further proceedings." Doe alleged in his petition that TAMU denied his request, and Dr. Harrell confirmed TAMU's denial, providing in her declaration: "[TAMU] responded that cross-examination may

occur through written questions to the chairperson of the [Hearing], who would ask those questions per TAMU's protocol."

Doe asserted in his petition that because his due process rights were violated, he did not participate in the Hearing. Dr. Harrell explained in her declaration that the Hearing was nevertheless held from October 15-17, 2018. Dr. Harrell stated that she served as the Student Conduct Administrator during the Hearing and therefore "presented the information identifying the potential conduct violations." Dr. Harrell explained that several witnesses—all three complainants, one complainant's roommate, and Doe's roommate—then testified during the Hearing. Dr. Harrell stated that all the witnesses supported that Doe had violated TAMU's policies. Dr. Harrell explained that the Hearing panel then found Doe "responsible for multiple charges of sexual abuse, sexual contact, dating violence, harassment, sexual harassment, drugs, and alcohol." Dr. Harrell stated that based on the findings, the Hearing panel issued a sanction of expulsion against Doe.

Doe alleged in his petition that pursuant to TAMU's procedure, on October 24, 2018, he appealed the findings made at the Hearing "because his due process rights had been violated." Doe alleged that at that time, he again "requested that he (or his counsel) be given the opportunity to cross-examine his accusers" but that his request was again denied. Doe alleged that TAMU nevertheless "agreed to hear [his] appeal and review the findings made by the three-member panel at the Hearing at a scheduled appeal hearing on November 16, 2018." Doe alleged that after the appeal hearing, his expulsion from TAMU was upheld and that TAMU immediately banned him from returning to TAMU's

campus. Doe alleged that he was therefore prevented from completing his final coursework and from receiving his undergraduate degree.

Doe sued TAMU, alleging that TAMU violated his right to due course of law under the Texas Constitution when TAMU employees "prevented Doe from undertaking any meaningful cross-examination by an attorney and prevented any cross-examination about the relationship between Doe and the accused [*sic*] relevant to whether the conduct at issue was consensual." Doe sought injunctive relief that would enjoin and restrain TAMU, its agents, servants, representatives, attorneys, and/or anyone working in concert with the foregoing, from preventing Doe from attending class and from completing the requirements for his undergraduate degree.

TAMU filed a plea to the jurisdiction based on sovereign immunity, which the trial court denied.

**STANDARD OF REVIEW**

We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a party has filed a plea to the jurisdiction challenging the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See id.* If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

If in its plea to the jurisdiction a party challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues

raised, as the trial court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226-28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

*Tex. A&M Univ. v. Starks*, 500 S.W.3d 560, 567 (Tex. App.—Waco 2016, no pet.) (quoting

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 321 S.W.3d 1, 3-4 (Tex. App.—Houston

[14th Dist.] 2008), *aff'd*, 320 S.W.3d 829 (Tex. 2010)).

## DISCUSSION

Unless the Legislature has consented to suit, sovereign immunity generally

deprives a trial court of jurisdiction over a lawsuit in which a party has sued the State or

a state agency. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

TAMU is a state agency. *See Tex. A&M Univ. v. Carapia*, 494 S.W.3d 201, 205 (Tex. App.—

Waco 2015, pet. denied). But sovereign immunity does not protect the State or a state

agency, like TAMU, from a suit seeking equitable relief for a violation of the due-course-

of-law clause of the Texas Constitution. *See Tex. Tech Univ. Health Scis. Ctr. v. Enoh*, 545

S.W.3d 607, 617 (Tex. App.—El Paso 2016, no pet.). Doe may therefore maintain his suit

against TAMU to the extent Doe has pleaded a viable due-course-of-law claim against

TAMU. *See City of Houston v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 38 (Tex. App.—

Houston [1st Dist.] 2014, pet. denied).

The Texas Constitution's due-course-of-law guarantee provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. It is nearly identical

to the Fourteenth Amendment's due-process clause, which provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law …." U.S. CONST. amend. XIV, § 1. "While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction" and thus "have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

*Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019); *accord Carapia*, 494 S.W.3d at 205-06. We also use the terms "due process" and "due course" interchangeably in the present case.

In its first issue, TAMU contends that Doe failed to plead—and cannot plead—a viable due-process claim against TAMU because Doe waived his claim when he chose not to participate in the Hearing. Doe responds that he did not waive his due-process claim against TAMU because TAMU expressly denied his right to attorney cross-examination.

In *Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit held:

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982); *see also Bohn v. County of Dakota*, 772 F.2d 1433, 1441 (8th Cir. 1985). A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back

what he wants.  *See McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995); *Dwyer v. Regan*, 777 F.2d 825, 834-35 (2d Cir. 1985), *modified on other grounds*, 793 F.2d 457 (2d Cir. 1986); *Riggins v.* [*Bd.*] *of Regents* [*of Univ. of Neb.*], 790 F.2d 707, 711-12 (8th Cir. 1986).

*Alvin*, 227 F.3d at 116.

Here, Doe alleged in his petition that TAMU violated his due-process rights when TAMU employees prevented him from "undertaking any meaningful cross-examination by an attorney" at the Hearing.  Doe had not participated in the Hearing, but it is undisputed that even if Doe had participated in the Hearing, TAMU would not have allowed Doe's attorney to directly cross-examine witnesses at the Hearing.  The process that Doe contends that he was due would therefore not have been available to him even if he had participated in the Hearing.  Accordingly, we conclude that Doe did not waive his due-process claim regarding attorney cross-examination when he chose not to participate in the Hearing.  *See id.*

On the other hand, Doe also alleged in his petition that TAMU violated his due-process rights when TAMU employees prevented him from any cross-examination about the relationship between him and the complainants relevant to whether the conduct at issue was consensual.  Dr. Harrell specifically stated in her declaration: "Generally, in sexual misconduct cases, any question concerning the party's relationship and sexual behavior is permitted so long as it is relevant and not asked just to harass, embarrass, or humiliate the other party."  Thus, in this instance, it appears that the Hearing would have provided an adequate procedural remedy for Doe if Doe had participated in the Hearing.  Accordingly, we conclude that Doe forfeited his due-process claim regarding the content

of questions that might have been asked the witnesses because Doe chose not to participate in the Hearing. *See id.* TAMU's first issue is sustained in part and overruled in part.

In its second issue, TAMU contends that Doe failed to plead—and cannot plead—a viable due-process claim against TAMU because use of an intermediary for cross-examination does not violate the minimum requirements for due process.

A two-part test governs due-process claims. *Mosley*, 593 S.W.3d at 264. We must determine (1) whether a plaintiff has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *Id.* (citing *Than*, 901 S.W.2d at 929).

We begin with the first part of the test, *i.e.*, whether Doe has a protected liberty or property interest that is entitled to procedural due process protection. *See id.* Both TAMU and Doe assume that the first part of the test is satisfied, and we agree. "Included among the protected liberty interests is the right 'to engage in any of the common occupations of life.'" *Id.* (quoting *Than*, 901 S.W.2d at 929 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706-07, 33 L.Ed.2d 548 (1972))). "Due process must also be satisfied 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'" *Id.* (quoting *Than*, 901 S.W.2d at 930). An undergraduate college student charged by his university with sexual misconduct faces serious damage to his reputation and the loss of his chosen profession.

We therefore turn to the second part of the test, *i.e.*, what process is due. *See Mosley*, 593 S.W.3d at 264.

> Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Mullane v. Cent*[.] *Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); [*House of Tobacco, Inc. v.*] *Calvert*, 394 S.W.2d [654,] 657 [(Tex. 1965)]. What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902; *Goss* [*v. Lopez*], 419 U.S. [565,] 578, 95 S.Ct. [729,] 738-39[, 42 L.Ed.2d 725 (1975)]. This flexible standard includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

*Than*, 901 S.W.2d at 929.

Regarding the first factor, TAMU does not dispute that Doe's private interest at stake in this case is significant. "A finding of responsibility for a sexual offense can have a 'lasting impact' on a student's personal life, in addition to his 'educational and employment opportunities.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017). Doe's "private interest that will be affected by the official action" is therefore compelling. *See Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

On the other hand, TAMU's interest, *i.e.*, the third factor, is also significant. *See id.* The United States Court of Appeals for the Fifth Circuit recently recognized in *Walsh v. Hodge*, 975 F.3d 475 (5th Cir. 2020), a case very similar to the present case, that a university has a significant interest in preserving its resources to serve its primary function of education, in protecting vulnerable witnesses, and in providing a safe environment for other members of the faculty and student body. *See id.* at 484.

Doe nevertheless argues that because of the United States Department of Education's new Title IX regulations, TAMU has no burden associated with providing attorney cross-examination. Under the new regulations, universities must permit each party's advisor of their choice, who may be an attorney, to cross-examine the other party and all witnesses at a live hearing. But the new Title IX regulations took effect long after the Hearing in this case, and our analysis focuses on TAMU's interest at the time of the alleged due-process violation.

We thus turn to the second factor, *i.e.*, the risk of erroneous deprivation of Doe's interest under the procedure used by TAMU and the probable value, if any, of attorney cross-examination. *See Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. Several courts have held that questioning of witnesses by a neutral party at a live hearing did not create an unacceptable risk of erroneous deprivation. *See Walsh*, 975 F.3d at 484-85 (holding that "credibility was critical" and that due process therefore required some opportunity for cross-examination but stating that the court had no reason to believe that questioning by neutral party was "so fundamentally flawed as to create a categorically unacceptable risk of erroneous deprivation"); *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 69 (1st Cir. 2019) ("[W]e have no reason to believe that questioning of a complaining witness by a neutral party is so fundamentally flawed as to create a categorically unacceptable risk of erroneous deprivation."); *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) ("Although an important notion in our concept of justice is the cross-examination of witnesses, there was no denial of appellants' constitutional rights to due process by their inability to question the adverse witnesses in the usual, adversarial manner.").

Doe cites *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), to emphasize the importance of *adversarial* cross-examination. The United States Court of Appeals for the Sixth Circuit held in *Baum* that "if credibility is in dispute and material to the outcome, due process requires cross-examination." *Id.* at 584. But *Baum* does not state that the cross-examination may never be "a circumscribed version of cross-examination." *See id.* at 585.

Doe also complains that here, the panel member questioning the witnesses was aligned with the complainants and not neutral. But the chairperson at the Hearing stated in a declaration attached to TAMU's plea to the jurisdiction that "[t]he primary duty of the chairperson is to ensure a fair process for both the complainant *and* the respondent." [Emphasis added.]

For these reasons, we conclude that Doe has failed to plead—and cannot plead—a viable due-process claim against TAMU. TAMU's second issue is sustained.

In its third issue, TAMU contends that Doe failed to plead—and cannot plead—a viable due-process claim against TAMU because Doe cannot show prejudice. In light of our determination of TAMU's first two issues, however, we need not reach TAMU's third issue.

We reverse the trial court's order denying TAMU's plea to the jurisdiction and render a judgment of dismissal.


REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Neill
  (Chief Justice Gray dissenting with a note)*
Reversed and rendered
Opinion delivered and filed December 30, 2020
[CV06]

\*   (Chief Justice Gray dissents. A separate opinion will not issue. Chief Justice Gray provides the following note, however, to explain his vote. We should be careful here, as we always must. This proceeding is a little trickier than most. There are two levels of merits-based issues in this case. There are the merits of what Doe is found to have done that resulted in his expulsion, and there are the merits of the alleged due course of law violation. Neither, let me repeat, neither of those merits-based analyses is at issue in this proceeding. The only issue in this proceeding is whether the alleged violation of Doe's right to due course of law is within the jurisdiction of the district court. This Court, in this interlocutory appeal, is not to decide whether the process alleged to have been made available to Doe meets the minimum requirement to comply with due course of law. It appears the Court is drawn in by TAMU's arguments that if it appears TAMU has a royal flush with regards to the merits of the argument that there is no due course of law violation, in essence that there is no way for TAMU to lose that issue, somehow that deprives the trial court of jurisdiction to see the hands of all the players and decide who wins. The trial court made the correct decision that it has jurisdiction to determine whether TAMU violated Doe's right to due course of law. Because the Court makes a preemptive determination of the merits of the issue that should be decided by the trial court, Chief Justice Gray respectfully dissents.)

